**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SIEVERT ELECTRIC SERVICE AND SALES COMPANY, ) ) ) | |
| Plaintiff, ) ) | Case No. 22-cv-06380 |
| v. ) ) | Judge Joan H. Lefkow |
| MICHAEL STORAKO, et al., ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Sievert Electrical Service and Sales Company ("Sievert"), an electrical services contractor, sued two of its former employees, Michael Storako and Michael Clutter, and their subsequent employer, Integrated Electrical Services, LLC ("Integrated"), alleging that defendants misappropriated its trade secrets in violation of the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/2. Further, plaintiff brings state court tortious interference claims against all parties and breach of fiduciary duty claims against Storako and Clutter.[1] Defendants move to dismiss arguing that the first amended complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). (Dkts. 33-34.) For the reasons stated below, the motion to dismiss is granted in part.[2]

---

[1] While defendants assert that plaintiff brings its breach of fiduciary duty claim against all defendants, plaintiff clarified that its claim is only against Storako and Clutter.

[2] Based on the allegations in the First Amended Complaint, the court concludes that it has jurisdiction under 18 U.S.C. § 1836(c).

## BACKGROUND[3]

Sievert is a commercial electrical contractor that provides project management and "turnkey solutions," ranging from electrical construction, data communications, and visual displays to major construction projects for commercial and industrial clients across the country. (Dkt. 30 ¶ 34.) Over the years, Sievert alleges that it has "invested a substantial amount of money and time" to develop detailed customer contact and business interaction information ("CBI") that enables it to perform its services more efficiently and economically than others in the industry, giving it a competitive advantage. (Dkt. 30 ¶ 35.)

Sievert's CBI includes "detailed information … concerning the identity of its customer contact information and detailed information regarding all interactions and the sales and services its employees have performed for each of these customers." (Dkt. 30 ¶ 16(a)). As part of its CBI, Sievert maintains "its estimating protocols and formula, [] its bids, pricing structure, customer job specifications, and contracts." (Dkt. 30 ¶ 16(b)). Sievert keeps all of this confidential and secret. The CBI Sievert aims to protect in this lawsuit is "confidential information that [it] relies upon for guidance in the pricing and performance criteria for the projects it performs." (Dkt. 30 ¶ 17.) Sievert derives independent economic value by relying on CBI when it submits proposals to attract clients, as its CBI allows it to "set forth the parameters and procedures for how its field employees will perform the project specifications under the oversight of Sievert management and financial personnel." (Dkt. 30 ¶ 30.)

Storako worked for Sievert for 35 years and was serving as a vice president when he resigned from the company in September 2022. Clutter worked at the company for 18 years,

---

[3] The facts are taken from the well-pleaded allegations in the complaint and are presumed to be true for the purpose of resolving the pending motion. *See General Electric Capital Corp.* v. *Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997).

2

most recently serving in the role of "superintendent" when he left the company around the same time. Both signed an "Acknowledgement of Receipt" of the company's Employee Handbook, which contained a Non-Disclosure Policy. (Dkt. 30 ¶¶ 19(a), 41, 43). The Non-Disclosure Policy includes a non-exhaustive list of the types of confidential information it covers and further states:

> Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment and legal action, even if they do not actually benefit from the disclosed information.

(Dkt. 30 ¶ 41).

Employees are given access to CBI on a need-to-know basis. The company stores portions of its CBI on two different secure software programs: Estimation and Dispatch Direct. Storako was the only employee authorized to use the Estimation software. The software enabled him to enter "job project specification parameters … along with a bill of materials … [and] labor specifications [] to compare them to industry-leading product and pricing software" as well as "to review past Sievert job projects that were similar (in whole or part) to the proposed new project that he was preparing to quote. He could then make unique and historically-based adjustments to the estimates for time and materials that were prepared by the software program." (Dkt. 30 ¶¶ 22, 23.)

Storako and Clutter could both access the Dispatch Direct software. Dispatch Direct contained "job specifications, labor and material costs, quotations and proposals, change orders, customer contact information and notations of all interactions between Sievert personnel" and their customers. While some employees could only access information related to their own projects on Direct Dispatch, Storako and Clutter could access confidential information about all of the company's projects.

3

By September 2022, Storako and Clutter both resigned from their positions at Sievert and joined Integrated, a competing electrical contracting company. Plaintiff alleges Storako and Clutter accessed, impermissibly copied, and provided Integrated with its CBI to give it a competitive advantage over Sievert. Even more, plaintiff alleges Storako deleted and destroyed portions of its CBI with the intent of denying Sievert an economic advantage over their new employer.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. To withstand the motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Northwestern Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

## ANALYSIS

A. Trade Secrets – Counts I & II

To state a claim for misappropriation of trade secrets under the ITSA, a plaintiff must allege (1) the existence of a trade secret (2) that a defendant misappropriated the trade secret, and (3) that the owner of the secret was damaged by the misappropriation. *Covenant Aviation Sec., LLC* v. *Berry*, 15 F. Supp. 3d 813, 817 (N.D. Ill. 2014); *see also Liebert Corp.* v. *Mazur*, 827

4

N.E.2d 909, 925 (Ill. App. Ct. 2005).[4] The DTSA creates an analogous cause of action for misappropriation of trade secrets involved in interstate commerce. 18 U.S.C. § 1836(b)(1). Given the similarities between the DTSA and ITSA, courts address the two claims together. *Aon Risk Servs. Companies, Inc.* v. *Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019). Defendants challenge the sufficiency of plaintiff's trade secret claims only with respect to the first element, the existence of a trade secret.

1. **Existence of a Trade Secret**

To successfully plead a claim under the DTSA or ITSA, a plaintiff must allege the existence of a trade secret. The DTSA "defines a trade secret as 'business-related information that the owner of which has taken reasonable measures to keep secret and from which the owner derives economic value from the information not being generally known or readily ascertainable by others.'" *Sonrai Sys., LLC* v. *Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613–14 (N.D. Ill. 2023) (quoting *Busey Bank* v. *Turney*, No. 21 C 2900, 2022 WL 92940, at *5 (N.D. Ill. Jan. 10, 2022) (paraphrasing 18 U.S.C. § 1839(3))). The ITSA imposes substantially the same standard, defining a trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. 1065/2(d).

---

[4] Seventh Circuit opinions prior to *Liebert* formulated the third element of an ITSA claim to require that the trade secret was used in the defendant's business. *See Learning Curve Toys, Inc.* v. *PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). This element is not at issue in this case.

## 2. Sufficient Identification of Information

As a threshold matter, defendants argue that Sievert has not identified its purported trade secrets with sufficient specificity. The existence of a trade secret is ordinarily a question of fact "best 'resolved by a fact finder after full presentation of evidence from each side.'" *Learning Curve*, 342 F.3d at 723 (citing *Lear Siegler, Inc.* v. *Ark–Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)). Plaintiffs need not disclose trade secrets in detail, as "courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant*, 15 F. Supp. 3d at 818; *see e.g.*, *Papa John's Int'l* v. *Rezko*, 446 F. Supp. 2d 801, 811–12 (N.D. Ill. 2006) (permitting claim to proceed past motion to dismiss stage where "the hurdle is much lower[]" than for preliminary and permanent injunctions even though which it was "unclear which trade secrets [had] allegedly been misappropriated.") At the pleading stage, courts recognize the interest in avoiding public disclosure of purported trade secrets and, accordingly, only dismiss claims for lack of specificity in extreme cases. *Sonrai*, 658 F. Supp. 3d at 614. [5]

---

[5] In challenging that plaintiff has not alleged facts sufficient to prove the existence of its purported trade secret, defendants rely on cases that were decided or affirmed after evidentiary hearings on motions for injunctive relief, *see e.g.*, *UTStarcom, Inc.* v. *Starent Networks, Corp.*, 675 F. Supp. 2d 854, 865–71 (N.D. Ill. 2009) (weighing parties' evidence of secrecy on a motion for preliminary injunction); *PrimeSource Bldg. Prod., Inc.* v. *Huttig Bldg. Prod., Inc.*, No. 16 CV 11390, 2017 WL 7795125, at *3 (N.D. Ill. Dec. 9, 2017) (reaching conclusion about existence of trade secrets after seven-day evidentiary hearing on preliminary injunction motions); *Arjo, Inc.* v. *Handicare USA, Inc.*, No. 18 C 2554, 2018 WL 5298527, at *4 (N.D. Ill. Oct. 25, 2018) (same); *American Family Mutual Insurance Co.* v. *Roth*, 485 F.3d 930, 933–34 (7th Cir. 2007) (affirming lower court's finding after evidentiary hearing on preliminary injunction that customer information in plaintiff's database constitutes a trade secret); *Liebert*, 827 N.E.2d at 920-21, 930 (affirming trial court's finding that customer list is not trade secret after evidentiary hearing on motion for preliminary injunction); *Stenstrom Petroleum Servs. Grp., Inc.* v. *Mesch*, 874 N.E.2d 959, 971 (Ill. App. Ct. 2007) (same), after the close of fact discovery at summary judgment, *see e.g.*, *BDT Prod., Inc.* v. *Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 893 (E.D. Ky. 2003) (reaching conclusion on review at summary judgment that plaintiff failed to take reasonable steps to ensure secrecy of alleged trade secret), or after trial. *See Composite Marine Propellers, Inc.* v. *Van Der Woude*, 962 F.2d 1263, 1265, 1268 (7th Cir. 1992) (setting aside jury verdict that defendants misappropriated plaintiff's trade secrets).

In *Covenant*, 15 F. Supp. 3d at 818, the court found that plaintiff's allegations were pleaded with sufficient specificity when it described the trade secrets broadly as "confidential and proprietary information" that included "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports." Similarly, a complaint was sufficiently specific in *Fire 'Em Up, Inc.* v. *Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011), where an alleged "list of current and prospective customers, [suppliers, and business partners], combinations or compilations of materials necessary to create [a propane injection system] or perform certain services, programs, methods, techniques and devices used by [plaintiff] in creating [the system] and rendering its services, financial data, marketing plans and advertising strategies" together constituted trade secrets.

Turning to this case, Sievert goes further than merely naming its Estimation and Dispatch Direct Software and declaring that all the data stored within them constitute trade secrets. Sievert points to particular types of information, including customer contact information, details regarding interactions, sales, and services its employees have performed for each of these customers, estimating protocols and formula, its bids, pricing structure, customer job specifications, and contracts, that it "relies upon for guidance in the pricing and performance criteria for the projects it performs with respect to its work involved in interstate commerce." (Dkt. 30 ¶ 17.) The factual detail that plaintiff has alleged is not dissimilar to the specificity of complaints in other cases surviving motions to dismiss. *See, e.g.*, *Covenant,* 15 F. Supp. 3d at 818; *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 574 (N.D. Ill. 2019) (allowing case to proceed beyond motion to dismiss while recognizing "that CDK's allegations regarding

7

the claimed trade secrets are not robust"); *contra Chatterplug, Inc.* v. *Digital Intent, LLC*, No. 1:16-CV-4056, 2016 WL 6395409, at *3 (N.D. Ill. Oct. 28, 2016) (dismissing without prejudice to re-plead where the court could not determine even the most "general contours" of the alleged trade secret).[6] Plaintiff's description of CBI is admittedly broad, but it has put defendants on notice of the types of information Sievert claims are trade secrets at issue in this litigation. *See Twombly*, 550 U.S. at 555. That is all that is required at this stage of the litigation.[7]

### 3. Reasonable Measures to Keep Information Secret

Defendants argue next that plaintiff has not sufficiently described the steps it has taken to protect the disclosure of its purported trade secrets. Under both the DTSA or ITSA, a plaintiff must take reasonable efforts to ensure the secrecy of its trade secrets, in this case the CBI. *Sonrai*, 658 F. Supp. 3d at 615 (citing 18 U.S.C. § 1839(3)(b); 765 Ill. Comp. Stat. 1065/2(d)(2)). Deciding whether a plaintiff's precautions to protect the secrecy of purported trade secrets are reasonable typically requires a fact-specific inquiry that depends on the particularities of each plaintiff's business. *Id*. At the pleading stage, a plaintiff is required only to allege the measures it took in general terms. *Covenant*, 15 F. Supp. 3d at 818.

Here, Sievert alleges that it protects its CBI in several ways. It requires employees to acknowledge a non-disclosure policy in its employee handbook and to agree to a usage and monitoring policy each time they access its computer system. Moreover, it restricts access to CBI

---

[6] Defendants argue that plaintiff has not alleged facts concerning the six-factor inquiry set forth by the Restatement (First) of Torts § 757, cmt. b (1939), to determine whether a trade secret exists. However, the Seventh Circuit has strongly urged against any approach that views the six-factor as a list of required elements. *Learning Curve*, 342 F.3d at 722.

[7] Contrary to defendants' argument, that Sievert has not moved for a preliminary injunction does not influence whether or not it has a protectable trade secret. Courts recognize the existence of trade secrets where plaintiffs similarly did not seek preliminary injunctive relief. *See e.g.*, *Covenant*, 15 F. Supp. 3d at 817; *Cohabaco Cigar*, 1998 WL 773696, at *1.

8

on a need-to-know basis. Sievert's computers are password protected and employees can only log into their computers and various software using unique employee IDs. These precautions are similar to what the plaintiff alleged in its complaint in *Sonrai*, 658 F. Supp. 3d at 615-16. There, the plaintiff alleged "that it enters confidentiality agreements and takes numerous other steps to protect its confidential information, including sharing information only on a need-to-know basis and using password protection in addition to other security technologies." *Id*. at 616. These alleged measures, the court deemed sufficient to survive a motion to dismiss. *Id*.

Defendants argue that Sievert's alleged precautions are lacking, pointing to various deficiencies in plaintiff's efforts to maintain the secrecy of the CBI. They emphasize that Sievert's customers are not required to sign non-disclosure agreements, that Sievert did not require Storako and Clutter to sign employment agreements with confidentiality, non-disclosure, or non-compete covenants to protect the CBI, and that it does not require its customers not to share with third parties CBI they receive from Sievert. *But see Fire 'Em Up,* 799 F. Supp. 2d at 851 (agreement restricting use of information *alone* without additional measures was insufficient to plead that secrecy of alleged trade secret was adequately maintained). Sievert is not required to allege that it took every viable or prudent measure to secure its CBI to survive a motion to dismiss. Certainly, plaintiff will need to bear its burden of proof in demonstrating the reasonableness of the measures it took at a later stage in the litigation. *See Tax Track Systems Corp.* v. *New Investor World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007) ("Typically, what [protective] measures are reasonable in a given [trade secret] case is an issue for a jury.")

### 4. Information Derives Economic Value from Secrecy

Finally, a plaintiff must allege facts sufficient to establish that it derives economic value from its CBI not being generally known or readily ascertainable by others. Trade secret

protection is generally only available if the secrecy of a purported trade secret generates economic value; protection is unavailable for "information generally known or understood within an industry." *Learning Curve*, 342 F.3d at 722 (internal citation omitted). Courts allow claims to survive motions to dismiss where plaintiffs allege that the secrecy of the purported trade secret imparts economic value with little additional detail. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 574 (N.D. Ill. 2019) (finding plaintiff's general allegation that its purported trade secrets derived "economic value from not being generally known to … other persons who can obtain economic value from its disclosure or use, such as other [] providers, application providers, or third-party data extractors" sufficient to withstand motion to dismiss); *Nextpulse, LLC* v. *Life Fitness, LLC*, No. 22 CV 03239, 2024 WL 1376213, at *8 (N.D. Ill. Mar. 31, 2024) (finding plaintiff established economic value by alleging it "invested time and money in developing" secrets that were "not generally known to the public or to other persons who could obtain economic value from their disclosure or use") (internal quotations omitted); *Covenant*, 15 F. Supp. 3d at 818-19 (finding economic value inherent in plaintiff's purported trade secret, namely its confidential and proprietary business information).

Sievert alleges that it has "invested a substantial amount of money and time" in developing its CBI that gives it a competitive advantage and from which it "derives independent economic value" by relying upon it when putting together proposals to prospective clients. (Dkt. 30 ¶ 83). It alleges further that its competitors could obtain economic value if the CBI were "readily available through proper means—which it is not." (Dkt. 30 ¶ 31).

Defendants also argue that Sievert's CBI cannot be a trade secret, as certain portions of the CBI as described are generally known in the industry. To make its argument, defendants introduce and rely on facts that exist outside the scope of plaintiff's complaint and that are

otherwise unsupported by any admissible evidence at this point. Defendants must develop facts countering plaintiff's allegations during the course of discovery. When reviewing a motion to dismiss, the court assumes non-conclusional allegations in the complaint as true, even if they appear "doubtful in fact." *Twombly*, 550 U.S. at 555. Insofar as a plausibility determination does require a court to "draw on its judicial experience and common sense," a court does so while accepting well-pleaded facts as true. *McCauley* v. *City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The factual questions defendants introduce, including whether Sievert keeps its CBI confidential effectively and whether portions of the CBI plaintiff hopes to protect are known to others in the industry, are ordinarily "best resolved by a fact finder." *Learning Curve*, 342 F.3d at 723 (quotation omitted). As it stands, plaintiff has identified the trade secrets at issue with sufficient specificity.

As such, the court denies the motion with respect to plaintiff's trade secret claims.

### B. Tortious Interference - Counts IV-V

Defendants also move to dismiss plaintiff's tortious interference claims brought against all defendants. Plaintiff brings two separate claims, one for interference with contractual relations and the other for interference with prospective business relations.

Under Illinois law, both claims have similar elements. To state a claim for tortious interference with contractual relations, a plaintiff must state facts sufficient to allege (1) the existence of a valid contract, (2) the defendant's knowledge of that contract, (3) "defendant's intentional and unjustified inducement of a breach" of that contract, (4) a subsequent breach, and (5) damages. *Webb* v. *Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). To state a claim for tortious interference with business relations, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of that expectancy, (3)

11

defendant's purposeful interference that prevents the establishment of the business relationship; and (4) resulting damages to the plaintiff. *Foster* v. *Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (internal quotation omitted).

Contrary to defendants' contention, Sievert has pleaded facts sufficient to make both claims with respect to Storako and Clutter. Both personally helped prepare proposals for customers while working at Sievert, at least one of which resulted in a contractual relationship before Storako left the company. Sievert alleges Storako and Clutter impermissibly used Sievert's CBI to convince its clients to either cancel existing contracts or redirect their business to Integrated. While employees are certainly permitted to compete with past employers, "[that] privilege … does not extend to improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement." *Cohabaco Cigar*, 1998 WL 773696, at *8 (internal citations omitted). Plaintiff sufficiently alleges that Storako and Clutter used improper means to compete with Sievert.

In the alternative, defendants argue that plaintiff's claims fail because plaintiff's allegations "depend on improper interference tied to the use of [p]laintiff's alleged trade secrets" – trade secrets they argue do not exist. (Dkt. 34 at 17.) However, defendants provide scant support for this argument beyond this. *United States* v. *McGhee*, 98 F.4th 816, 825 (7th Cir. 2024) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations omitted). And because this court finds that plaintiff has stated facts sufficient to establishing the existence of protectable trade secrets, this argument is unavailing. The court agrees with defendants, however, that plaintiff has not demonstrated how Integrated would be liable for either tortious interference claim. Viewing the complaint in

the light most favorable to Sievert, the court denies the motion to dismiss its tortious interference claims against Storako and Clutter and grants the motion against Integrated.

C. **Breach of Fiduciary Duty – Count III**

Sievert alleges that Storako and Clutter owed it a duty of loyalty as employees and that they breached that duty by misappropriating Sievert's purported trade secrets. Defendants' sole argument urging this court to dismiss plaintiff's claims against both individuals is predicated on this court's finding that plaintiff failed to allege a protectable trade secret. Because plaintiff's trade secret claims may proceed, this court declines to dismiss plaintiff's breach of fiduciary duty claim against Storako and Clutter.

## CONCLUSION AND ORDER

For the reasons stated herein, defendants' motion to dismiss is granted in part and denied in part. Counts IV & V are dismissed with respect only to Integrated. The motion is denied with respect to all other claims. Defendants shall answer the first amended complaint. A scheduling conference will be held on October 23, 2024, at 9:30 a.m. in person in courtroom 2201.

Date: September 30, 2024

_____
U.S. District Judge Joan H. Lefkow

13