**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SIEVERT ELECTRIC SERVICE AND SALES COMPANY,** | ) ) ) | **No. 22 CV 6380** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Magistrate Judge Young B. Kim** |
| **MICHAEL STORAKO, MICHAEL CLUTTER, and INTEGRATED ELECTRICAL SERVICES, LLC,** | ) ) ) ) | |
| **Defendants.** | ) ) | **July 24, 2025** |

**MEMORANDUM OPINION and ORDER**

Plaintiff Sievert Electric Service and Sales Company ("Sievert") alleges that Defendants Michael Storako and Michael Clutter, both former project managers at Sievert, stole Sievert's trade secrets in violation of the Defend Trade Secrets Act. Sievert also alleges that Storako and Clutter breached the common law duty of loyalty by copying and taking confidential customer contact and business information and using it for the benefit of their new employer, Integrated Electrical Services, LLC ("Integrated"). According to Sievert, Clutter transferred Sievert's trade secrets to himself before going on a leave of absence in early June 2022. (R. 30, Am. Compl. ¶¶ 67-68.) Rather than returning from his leave of absence, Clutter resigned from Sievert in September 2022 and immediately began working at Integrated using trade secrets he stole. (Id. ¶¶ 11, 67-71.) Sievert further alleges that Storako transferred Sievert's trade secrets to himself before he resigned from Sievert and began working at Integrated in August 2022. (Id. ¶¶ 6, 10, 55-66.)

Before the court are: (a) Sievert's motion to compel Clutter's responses to its Request to Produce ("RTP") Nos. 1-3, 5, 7, and 9, (R. 97 ("MTC Clutter")); (b) Sievert's motion to compel Storako's responses to its RTP Nos. 1-3, 5-7, and 9, (R. 101 ("MTC Storako")); (c) Sievert's motion to compel Integrated to revisit documents Integrated designated as attorneys' eyes only ("AEO") and identify documents responsive to each RTP by their Bates numbers, (R. 99 ("MTC Integrated")); and (d) Integrated's motion to compel Sievert's answers to its INT Nos. 2A, 2B, and 3-7 and several RTPs, (R. 104 ("MTC Sievert")). For the following reasons, the motions are granted in part and denied in part:

## Analysis

### A.    MTC Clutter

Sievert moves the court to compel Clutter's responses to its RTP Nos. 1-3, 5, 7, and 9. The motion is denied as to RTP No. 1 but granted in part as to RTP Nos. 2, 3, 5, 7, and 9.

| No. | Ruling |
| --- | --- |
| 1 | The motion is denied. Clutter's scope objection is sustained. A "forensic imaging" of a personal cell phone is a "comprehensive data extraction" that "captures a full-file system image (i.e., bit-for-bit copy) of accessible data," including "pictures, videos, chat histories, application data, location data, internet evidence, and deleted content." *See* Dennis Kiker *et al.*, *Commentary on Discovery of Mobile Device Data*, The Sedona Conference Working Group Series, May 2025, at 17-18. Imaging Clutter's personal phone would result in the collection of a vast amount of irrelevant information. Sievert claims that the collection would involve "a narrowly tailored forensic analysis" but offers no information on how it would narrowly tailor the analysis. (R. 97, MTC Clutter ¶ 28.) |
| 2 & 3 | The motion is granted in part. Clutter's vagueness objection regarding the term "Sievert clients" is overruled. The amended complaint alleges "situations" involving Sievert clients or prospective clients PNC Bank Realty Services, 1010 N. Lakeshore Drive, Marionjoy Rehab Hospital, |

|   | The Pinnacle, Pelar Construction project for Kenwood Citibank, PNC Bank-Elgin ATM Vestibule project, The Fordham, and 529 Territorial Drive-Chicago Steam (collectively, "Sievert Clients"). (R. 30, Am. Compl. ¶ 85.) It seems certain that at least the Sievert Clients are the "clients" contemplated in the RTPs, and the court will construe them as such. Clutter's vagueness objection regarding the phrase "cell phone call records" is also overruled. These records include documents reflecting phone calls Clutter placed using his cell phone, such as phone records, call logs, written notes, or call summaries. Clutter's scope objection is overruled. While imaging of Clutter's cell phone is overly broad, a narrower search for relevant text and call records is not—and it may be done using a less intrusive means like a logical collection. *See* Kiker at 18-20. Responsive communications on Clutter's cell phone are subject to discovery because ESI reflecting Clutter's discussions about Sievert or the Sievert Clients from the period when Sievert's confidential information was allegedly misappropriated are relevant. (R. 30, Am. Compl. ¶¶ 45, 67-70.) Accordingly, Clutter is ordered to produce responsive text and call records from cell phones he used between May 1, 2022—shortly before Clutter allegedly transferred Sievert's trade secrets—to the present. |
|---|---|
| 5 | The motion is granted in part. Clutter's relevance objection is overruled. How Clutter represented his knowledge of Sievert's business information and practices to a prospective employer that competes with Sievert may be relevant to the issue of disclosure or use of Sievert's trade secrets/confidential business information. Clutter represents that he has no documents responsive to this request, (R. 97, MTC Clutter, Ex. D ¶ 5), but text messages that co-defendant Storako produced in discovery show otherwise, (see id. Ex. E). There may be good reasons why Storako kept these text messages while Clutter did not. But Sievert raises a reasonable question as to whether Clutter performed a diligent inquiry to locate, review, and produce responsive communications, including ESI and text messages. Accordingly, Clutter must perform an additional search and make a diligent effort to locate, review, and produce responsive documents or communications from May 1, 2022, through September 30, 2022—the end of the month when Clutter joined Integrated. If he does not locate any responsive documents after a diligent search, he must answer, "None." Clutter's attorneys are reminded that they are to comply with their Rule 26(g) obligations. |
| 7 | The motion is granted in part. Clutter's vagueness objection with respect to the term "Sievert clients" is overruled as explained above. Clutter's relevance and scope objections are sustained in part. Documents or communications from the period when Sievert's confidential information was allegedly misappropriated are relevant. Clutter represents that he has no documents responsive to this request, (id. Ex. D ¶ 7), but Sievert |

| | |
|---|---|
| | again points to Storako's text messages showing Clutter discussing work for one of the Sievert Clients, (see id. Ex. F), suggesting that Clutter's representation may be false.  For the same reason described above, Clutter must perform an additional search and make a diligent effort to locate, review, and produce responsive documents or communications from May 1, 2022, through the present.  If he does not locate any responsive documents after a diligent search, he must answer, "None." |
| 9 | The motion is granted in part.  Clutter's relevance and scope objections are sustained in part.  Clutter claims he has no documents or communications responsive to this request but acknowledges a "voluminous amount of [responsive] correspondence" likely exists because Clutter and Storako worked together at Sievert. (R. 105, Clutter's Opp. to MTC Clutter ("Clutter Opp.") ¶ 22.)  Seivert alleges that Clutter's first actions related to the alleged misappropriation that occurred in June 2022.  (See R. 30, Am. Compl. ¶¶ 67-68.)  Given these allegations, Clutter's communications with Storako before mid-2022 are likely to include substantial—if not entirely—irrelevant information and therefore are not proportional to the needs of this case.  For the same reasons discussed above, there is a question as to whether Clutter performed a diligent search of his personal records.  The court orders Clutter to perform an additional search and make a diligent effort to locate, review, and produce responsive documents from May 1, 2022, through the present.  If he does not locate any responsive documents after a diligent search, he must answer, "None." |

## B.    MTC Storako

Sievert moves to compel Storako's responses to its RTP Nos. 1-3, 5-7, and 9.

The motion is denied as to RTP Nos. 1 and 9 but granted in part as to RTP Nos. 2,

3, and 5-7.

| No. | Ruling |
|---|---|
| 1 | The motion is denied for the same reasons the court denies the motion as to RTP No. 1 served on Clutter. |
| 2 & 3 | The motion is granted in part.  Storako's vagueness objections to the terms "cell phone texting records" and "cell phone call records" are overruled.  Storako's scope and relevance objections are overruled in part. Storako agreed to produce text messages between himself and Clutter and between himself and the Sievert Clients from July 1, 2022, through May 30, 2023, and those between himself and Integrated from July 1, 2022, through August 19, 2022.  But given Sievert's allegations, there may be |

| | |
|---|---|
| | responsive communications from a broader period. Storako's objection to producing metadata is also overruled in part. To the extent there is additional cost to produce versions of responsive communications that include metadata, Sievert appears to have "offered to bear all costs" associated with such production. (R. 101, MTC Storako at 6.) Subject to the foregoing, Storako is ordered to produce responsive text and call records from his cell phones from May 1, 2022, through the present. |
| 5 | The motion is granted in part. First, Storako's scope objection is overruled because the lack of any post-employment restrictive covenant between Storako and Sievert has no bearing on whether Storako misappropriated Sievert's trade secrets/confidential business information. Discovery into Storako's search for employment from Sievert's competitors may yield information relevant to Sievert's claims of misappropriation. Second, Storako's objections over the production of metadata are overruled. This information is needed to ensure authenticity and completeness of the production, and in any event, Sievert agrees to bear the portion of the costs associated with searching and producing responsive documents and data from Storako's cell phones. (Id.) Besides, metadata is discoverable. And while the court agrees it is likely that some documents responsive to this request are duplicative of documents responsive to RTP Nos. 4 and 7, (R. 108, Storako's Opp. to MTC Storako at 10), there are likely to be non-duplicative, responsive documents too. Storako is ordered to produce responsive documents from May 1, 2022, through August 31, 2022—the end of the month when Storako joined Integrated. |
| 6 & 7 | The motion is granted in part. Storako's vagueness objection regarding the phrase "related to or reflecting on solicitation" is overruled. However, outside of the Sievert Clients, it is unclear which, if any, customers qualify as "known prospective Sievert customers." Storako produced responsive documents generated between July 1, 2022, through August 19, 2022. For the reasons discussed with respect to RTP Nos. 2 and 3 above, relevant documents may exist outside of this period. Accordingly, Storako must search for and produce communications and documents responsive to these requests from May 1, 2022, through the present, but he may limit his search and production to communications related to the Sievert Clients. |
| 9 | The motion is denied. Storako agreed to produce documents or communications in which he "communicated to Integrated or Clutter any historical job project data, estimating protocols and formula, bids, pricing structure, customer job specifications, and job pricing information related to work which was performed on behalf of Sievert and documents or communications by him transmitting to Integrated or Clutter any quotes that were previously prepared on behalf of Sievert" with no temporal limitations. (R. 101, MTC Storako, Ex. B at ¶ 9.) The court finds this |

|  | scope to be reasonable. Storako then responded that he has "no such documents in his possession or control," (id.), and Sievert does not provide any facts to suggest that this response is inaccurate. Sievert may move to compel or for sanctions if it learns of facts tending to show that Storako's representation is false or questionable. |
|---|---|

## C.    MTC Integrated

Sievert moves the court to compel Integrated to: (1) "revisit" the number of documents from its production designated as AEO; and (2) identify the specific Bates number ranges responsive to each of Sievert's RTPs.[1] (See generally R. 99, MTC Integrated.)    For its part, Integrated argues that Sievert's motion is premature and should be denied at the outset because the parties do not dispute the points Sievert raises and Sievert failed to comply with the meet-and-confer requirements in the Federal and Local Rules.[2] (R. 106, Integrated's Opp. to MTC Integrated ("Integrated Opp.") at 3-9.)  But while the meet-and-confer process could have been more fulsome, it was not so deficient as to warrant denial on this basis

---

[1]   Sievert also asks the court to strike Integrated's "general" and "boilerplate" objections." (R. 99, MTC Integrated at 8.)  This request is denied as moot because on October 2, 2024, the court warned the parties that it would not "consider general objections to discovery requests when ruling on discovery issues." (R. 67.)  As for "boilerplate objections," their merit depends on the specificity and responsiveness. There is nothing inherently wrong with an objection being standard or repeatedly used in a discovery response, so long as the objection is specific enough to explain why a discovery request is objectionable.  As such, so long as "boilerplate objections" are not "general objections," the court must consider them.

[2]   Integrated should have raised the procedural issue in a separate motion to strike after Sievert filed its motion to compel rather than in its substantive opposition. Raising the issue early on would have allowed the court to assess the procedural argument promptly, and—had it been needed—order the parties to meet and confer once more in lieu of briefing the motion.

alone. For the reasons described below, the motion is granted in part and denied in part.

First, Sievert complains that 5,660 out of 6,420 documents, or approximately 88% of Integrated's production, are improperly designated as AEO. (R. 99, MTC Integrated at 2, 4.) The court's January 13, 2025 Agreed Confidentiality Order permits the designation of certain information as AEO if "the designating party determines in good faith that the designated information contains non-public information of a competitively or commercially sensitive nature, or that implicates the privacy interests of persons who are not a party to this lawsuit." (R. 80, Confidentiality Order at 3.) A party challenging a confidentiality designation must file a motion "that identifies the challenged material and sets forth in detail the basis for the challenge." (Id. at 8.) If a challenge to a specific designation is made, the designating party bears a "burden of persuasion" to show the designation is appropriate. (Id.)

Here, Sievert does not include a list of documents it says should be re-designated or attach challenged documents as sealed exhibits to the motion. Instead, Seivert lists seven Bates numbers from Integrated's production as examples of general categories of documents, including "invoices transmitted to customers (third-parties) or e-mail conversations between Integrated and customers regarding certain projects," that it argues are improperly designated as AEO. (R. 99, MTC Integrated at 5-6.) Sievert justifies its lack of specificity based on the "[breadth] of Integrated's production" designated as AEO, which it contends would

"not satisfy an [AEO] designation" because "many were transmitted to third-parties." (Id. at 6.) But referencing only general categories of documents and listing a handful of Bates numbers fails to "identif[y] the challenged material" as the Agreed Confidentiality Order requires. (R. 80, Confidentiality Order at 8.)

Still, Integrated attempts to meet its "burden of persuasion" to show its designations are appropriate. To do so, it provides marginally more detailed descriptions of the Bates stamped documents than Sievert references, stating that the documents include an "internal Integrated email forwarding invoice information from an Integrated customer," an "email [with a] customer discussing a change order," a "spreadsheet detailing a schedule for work on behalf of an Integrated customer," and several emails between Integrated and "vendor[s] discussing the delivery of supplies for an Integrated customer." (R. 106, Integrated Opp. at 9-10.) Integrated claims that because these documents relate to its customers and pricing information, they include "non-public information of a competitively or commercially sensitive nature" and are properly designated. (Id. at 9.) Based on Integrated's descriptions, the documents fall into the categories like those that Sievert itself alleges are types of business information Clutter and Storako stole. (Id. at 10.) As such, this portion of the motion is denied.

Second, Sievert asks the court to compel Integrated to identify specific Bates ranges in its production that correspond to Sievert's specific document requests, as it says is required under Rule 34. Rule 34(b)(2)(E)(i) requires a party to "produce documents as they are kept in the usual course of business" or "label [produced

documents] to correspond to the categories in the request."  Rule 34(b)(2)(E)(ii) in turn requires a party to produce ESI only "in the form in which it is ordinarily maintained or in a reasonably usable form."  In support of its request, Sievert points to *Montania v. Aetna Casualty and Surety Co.*, 153 F.R.D. 620, 621 (N.D. Ill. Feb. 11, 1994), in which the court compelled the plaintiff to specify which of around 17,000 pages of documents spread across eight boxes corresponded to the defendant's specific document requests.  Integrated responds that Sievert is not entitled to such a road map because it did not request one in its RTP instructions, and in any event argues that *Montania* is inapposite because it deals with hard copy production, not ESI.  (R. 106, Integrated Opp. at 12-13.)  Integrated is not alone in making such an argument.  As another court in this district recently recognized, courts "are split on whether the organization requirements in Rule 34(b)(2)(E)(i) apply to ESI and hard copy documents alike."  *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23 CV 0818, 2024 WL 3153321, at *1 (N.D. Ill. March 1, 2024).

The majority view is that Rule 34(b)(2)(E)(i)'s disjunctive organization requirement exists alongside Rule 34(b)(2)(E)(ii)'s separate ESI formatting requirements and applies to both ESI and hard copy documents. *See, e.g.*, *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 250-51 (N.D. Tex. 2016); *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 13 CV 260, 2016 WL 1244697, at *6 (M.D. Tenn. March 30, 2016); *Venture Corp. Ltd. v. Barrett*, No. 13 CV 3384, 2014 WL 5305575, at *2-*3 (N.D. Cal. Oct. 16,

2014); *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 12 CV 23, 2012 WL 6726412, at \*2 (W.D. Va. Dec. 27, 2012); *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 584 (C.D. Cal. 2011).

But some courts have held that the organizational requirements of Rule 34(b)(2)(E)(i) do not apply to ESI productions, and a road map is not required for ESI productions under Rule 34. *See, e.g.*, *In re Hair Relaxer*, 2024 WL 3153321, at \*2; *SolarCity Corp. v. Doria*, No. 16 CV 3085, 2018 WL 467898, at \*5 (S.D. Cal. Jan. 18, 2018); *Anderson Living Tr. v. WPX Energy Prod., LLC,* 298 F.R.D. 514, 523-26 (D.N.M. 2014). Integrated points out that a court in this district recently adopted the minority view in *In re Hair Relaxer*. (R. 106, Integrated Opp. at 12-13.) After reviewing the Advisory Committee notes and another court's analysis of the evolution of Rule 34, the court in *In re Hair Relaxer* concluded that treating ESI differently under the Rules is justified because ESI is generally text-searchable while hard copy documents are not. *In re Hair Relaxer*, 2024 WL 3153321, at \*2 (citing *Anderson Living Tr.*, 298 F.R.D. at 523-36).

Nevertheless, this court agrees with the majority view. Such a reading comports with the Advisory Committee's goal in rewriting Rule 34(b): to enact protections—like those adopted in 1980 for paper productions—that prevent parties from producing ESI in a way that creates obstacles for the receiving party. *See* Fed. R. Civ. P. 34(b), Advisory Committee's note to 2006 amendment ("[ESI production] should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for

10

the requesting party. Rule 34(b) is amended to ensure similar protection for [ESI].").   It is axiomatic that discovery responses themselves have significant evidentiary value as they constitute party admissions.   But without a clear connection between the discovery requests and the corresponding responses, the discovery responses cannot be deemed reliable.

Integrated's secondary argument that Sievert is not entitled to this organizational information because it did not request it in its RTP instructions is without merit.   Rule 34(b)(2)(E)(i) and (ii) sets forth organizational and formatting requirements.   A litigant need not instruct the opposing side to comply with the Federal Rules of Civil Procedure when responding to discovery requests. Accordingly, Integrated must ensure its ESI production corresponds to specific document requests.

Third, Integrated objects to some of Sievert's requests as overbroad because they seek all documents related to the hiring and employment of Clutter and Storako, (RTP Nos. 1-2), fail to specify a time period, (RTP Nos. 3-6), and are vague as to which clients are alleged to be prospective Sievert clients, (RTP Nos. 3-4), and duplicative, (RTP Nos. 5-7).   The court finds these specific objections and responses to be sufficient, and they are sustained.   And where Integrated limited its production based on an objection—for example, where it agreed to produce communications related to the Sievert Clients, (RTP Nos. 3-4)—the limitations are appropriate.   Regardless, Integrated produced documents responsive to each request except RTP No. 5, and it says it is not aware of any documents responsive to

that RTP. (See generally R. 99, MTC Integrated, Ex. 2.) The court thus finds Integrated adequately responded to Sievert's requests and agreed to make appropriate productions. The court cannot compel Integrated to produce documents that are not in its possession, custody, or control, or that do not exist. This portion of Sievert's motion is denied.

## D. MTC Sievert

Integrated moves the court to compel Sievert's answers to its Interrogatory Nos. 2A, 2B, and 3-7, explain Sievert's ESI search protocol, and produce certain documents. (See generally R. 104, MTC Sievert.) For the following reasons, the motion is granted in part and denied in part:

### 1. Interrogatories

| INT | Ruling |
| --- | --- |
| 2A | The motion is denied. Sievert's answer essentially states that historical job project data (namely, the labor hours required to complete a project), estimating protocols/formulas, and customer identity information are the misappropriated trade secrets/confidential information. Integrated may dispute whether the information Sievert provides is sufficient to establish protectable trade secrets, but that argument should be reserved for a later stage in the case.[3] |

---

[3] As the court noted in its ruling on Defendants' Motion to Dismiss, whether information qualifies as a trade secret is typically a factual question "best 'resolved by a fact finder after full presentation of evidence from each side.'" (R. 65, Order at 6 (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003)).) Integrated's citations on this issue suggest the same. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002) (requiring specific identification of trade secrets at summary judgment); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (same on appeal of final judgment); *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (same on appeal of final judgment); *cf. AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925-26 (N.D. Ill. 2001) (requiring plaintiff to specifically identify its trade secrets pursuant to third-party requests for discovery).

| 2B | The motion is granted in part.  Sievert answers that Storako and Clutter misappropriated information and then became employees of Integrated, and notes that additional documents shedding light on this INT will be produced in discovery.  With the benefit of the additional discovery now having occurred, Sievert is ordered to supplement this INT and disclose responsive information regarding what confidential information it alleges was misappropriated by whom, and how and when Integrated obtained that confidential information.  Sievert also has an obligation under Rule 26(e) to supplement its answer in a timely manner. |
|---|---|
| 3 | The motion is granted.  Sievert points to its answers in INT Nos. 2A, 2B, and 5 as setting forth the information requested in INT No. 3, but responsive information is not provided in those answers.  This INT seeks different information than that which is sought in—and responsive to— the other INTs.  Sievert is ordered to disclose responsive information. |
| 4 | The motion is granted in part.  Sievert adequately answers that it is difficult to assess the time, effort, and money it expended in developing historical job project data and estimating protocols/formulas and makes a "good faith estimate" of the cost of Storako's contributions in developing the same.  But it does not respond regarding the time, effort, and money it expended in gathering customer identity information and, as such, it must supplement its answer to address this issue. |
| 5 | The motion is denied.  Sievert's answer is adequate. |
| 6 | The motion is granted in part.  Sievert repeats the complaint's allegations of Storako's and Clutter's misappropriation of confidential data while noting that additional information regarding this INT will be produced in discovery.  With the benefit of the additional discovery having occurred, Sievert is ordered to supplement its answer to this INT and disclose responsive information regarding every act it contends constitutes misappropriation, when the acts occurred, and who committed those acts. |
| 7 | The motion is granted in part.  The court agrees with Sievert that providing calculations of alleged lost future profits is work better suited for expert witnesses.  However, with the benefit of the additional discovery now having occurred, Sievert is ordered to supplement its answer with the bases for alleged damages associated with the Sievert Clients. |

## 2.    Requests to Produce

Integrated also raises several issues with Sievert's production and its responses to Integrated's RTPs.  First, Sievert acknowledges it contracted with computer forensics professional Donald Wochna in its pre-lawsuit investigation into

Clutter's and Storako's conduct, (R. 104, MTC Sievert, Ex. U), but refuses to produce documents concerning the investigation based on the attorney-client privilege and work-product doctrine, (R. 107, Sievert's Opp. to MTC Sievert ("Sievert Opp.") at 9-10). The attorney-client privilege protects communications between a client and his lawyer—not documents related to an investigation a client orders a third-party computer forensics professional to perform—and does not apply here.

The work-product doctrine protects from disclosure "(1) 'documents and tangible things otherwise discoverable' (2) 'prepared by or for another party or by or for that other party's representative' (3) 'in anticipation of litigation or for trial.'" *Rao v. Bd. of Trs. of the Univ. of Ill.*, No. 14 CV 66, 2016 WL 6124436, at *6 (N.D. Ill. Oct. 20, 2016) (quoting *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 255 (N.D. Ill. 1999)). This protection ordinarily "applies to attorney-led investigations," *Club Gene & Georgetti, LP v. XL Ins. Am., Inc.*, No. 20 CV 652, 2021 WL 1239197, at *3 (N.D. Ill. April 2, 2021), but it can extend to materials prepared by non-attorneys in limited circumstances. The latter most commonly arises in the insurance context, where the creation of a document by the insurer was "caused by" the "substantial and significant threat of litigation" against the insurer or its insured. *Id.* at *4 (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992)). However, materials for general business purposes developed in the ordinary course of business—"'even if prepared at a time when litigation was reasonably anticipated' or that 'may have the incidental effect of

being helpful in litigation'"—are not protected. *See Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021) (quoting *Evans v. City of Chi.*, 231 F.R.D. 302, 310 (N.D. Ill. 2005)); *see also Club Gene & Georgetti*, 2021 WL 1239197, at *3 ("There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, likely to lead to litigation, [has] arisen.'" (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983))).  In short, for a non-lawyer investigative report to be protected, "[n]ot only must the 'primary motivating purpose behind the creation of the document or investigative report . . . be to aid in . . . litigation,'" but "the document must also be of a legal nature and 'primarily concerned with legal assistance; technical information is otherwise discoverable.'" *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000) (quoting *Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 582 (7th Cir. 1981)).

Arguing that its withholding is proper here, Sievert says it would be "premature" to produce Wochna's investigation documents because the parties have not yet retained experts and in any event, the investigation materials were "prepared in anticipation of litigation." (R. 107, Sievert Opp. at 9-10.)  But Sievert previously indicated that Wochna was "involved in the pre-filing investigation," and as of April 2025, was not retained as an expert witness, (R. 104, MTC Sievert, Ex. U), so premature expert discovery is not a legitimate basis for withholding the requested documents.  The record is devoid of any clear indication that Sievert's

attorneys requested the investigation in anticipation of filing a claim. Instead, it appears as though Sievert—as a "sophisticated" entity which "always, to some extent, anticipat[es] the possibility of" events giving rise to litigation—requested the investigation in the ordinary course of business. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013). Although Sievert disclosed to Integrated that Wochna "transmitted to [Sievert's counsel] some of his investigative findings," (R. 104, MTC Sievert, Ex. U), if Wochna's investigation had been directed by its attorneys in anticipation of filing a claim, one would expect the entirety of Wochna's investigation to have been transmitted to counsel. Regardless, merely transmitting the investigation findings to counsel does not trigger the broad application of the work-product doctrine. Attorney impressions and analysis of the investigation are shielded from disclosure under the doctrine, but technical or "[f]actual" information" relating to Wochna's investigation is not. *See Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). Accordingly, Sievert must produce the documents related to Wochna's investigation. To the extent documents reflect attorney impressions or analysis of the investigation, they may be withheld or redacted so long as they are properly disclosed in a privilege log.

Second, Integrated complains that Sievert failed to produce a privilege log. Federal Rule of Civil Procedure 26(b)(5)(A) requires a party withholding documents based on the attorney-client privilege or work-product doctrine to produce a privilege log "describ[ing] the nature of the [withheld] documents . . . in a manner that . . . will enable the other parties to assess the claim." Sievert does not dispute

that it withheld documents based on a privilege or immunity, but did not produce a privilege log. Had it done so, Integrated (and the court) could have assessed Sievert's specific claims as to whether specific documents or pages were properly withheld or redacted. If, after coming into compliance with the remainder of this order, Sievert continues to withhold or redact any documents based on the attorney-client privilege or work-product doctrine, it must produce a privilege log as required under Rule 26(b)(5)(A).

Third, Integrated asks the court to order Sievert to describe its ESI search protocol, including the names of the Sievert custodians, the sources of information, the search terms Sievert used to identify responsive ESI, and the temporal limitations applied to the ESI search. (R. 104, MTC Sievert at 16-17.) In support of its request, Integrated points to documents Sievert produced that are not the original versions of emails but are "internally forwarded" copies recently sent to another Sievert employee. (Id. (citing id. Ex. F at 2-3).) The presence of these documents in Sievert's production raises the question of whether this is the result of "self-collection" of discovery, which, Integrated argues, likely resulted in inappropriately narrow or incomplete searches and productions. (See, e.g., id. Ex. F at 9.)

Sievert responds that because the parties never agreed on an ESI search protocol, each is "left to their own devices" to conduct a proper search. (R. 107, Sievert Opp. at 9.) Because Sievert believes its search was adequate, and Integrated did not request specifics on Sievert's search process in an interrogatory,

Sievert argues it need not provide details on its ESI protocol. (Id.) The parties seemingly discussed, but never agreed to, an ESI protocol covering these issues, and their relatively limited efforts to resolve the issue—or to agree to disclose protocols afterward—were unsuccessful. Integrated raised the issue with Sievert in February 2025, (R. 104, MTC Sievert, Exs. F & G), and March 2025, (id. Ex. K), but received only a non-specific response before the motion to compel deadline, (id. Ex. L).

Discovery on discovery is generally disfavored, *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 161 (N.D. Ill. 2023), because responding parties—not requesting parties—are "best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI]," The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 52 (2018). That said, discovery regarding search protocols is permitted where the requesting party proves "a specific discovery deficiency in the responding party's production." *LKQ Corp.*, 345 F.R.D. at 162 (quoting 19 Sedona Conf. J. at 123-24).

While Integrated suggests that self-collection of discovery materials is inherently improper, without more, it does not prove the existence of a specific discovery deficiency. Likewise, Integrated's complaint that Seivert produced forwarded copies of emails rather than the originals simply suggests a deficiency *may* exist. Because Integrated did not prove the existence of a discovery deficiency, the court will not order Sievert to disclose its ESI search protocol. However, given

the genuine concerns around the adequacy of Seivert's search and collection and because the parties did not agree to an ESI protocol, Sievert must re-search its records and produce the original documents—including responsive emails—rather than forwarded copies, which would allow Integrated to assess and ensure authenticity and completeness of the production. In making any production consistent with this order, Sievert must confirm compliance with Rule 26(g).

Fourth, Integrated asks the court to compel Sievert to produce documents responsive to certain RTPs—specifically those that show "gross revenue" and "net profit" from providing electrical services, (RTP Nos. 17-18), and those that refer to Integrated as a competitor in the electrical services industry, (RTP No. 20). (R. 104, MTC Sievert at 18.) Sievert's objections to RTP Nos. 17 and 18 are overruled in part. While producing all of Sievert's revenue and profit figures is overbroad, some information—specifically regarding the Sievert Clients—may be relevant to alleged damages. The Agreed Confidentiality Order allows discovery materials including "commercially sensitive" information to be designated as AEO. (R. 80, Confidentiality Order at 3.) Sievert is therefore ordered to produce documents reflecting its profit and revenue amounts and projections for any projects related to the Sievert Clients. As for RTP No. 20, Sievert's response—simply directing Integrated to its own website and referring generally to other documents in the production—is inadequate. Sievert is ordered to produce documents discussing or referring to Integrated as a competitor or potential competitor in the electrical

services industry. If there are no responsive documents, Sievert must answer, "None."

Fifth, Integrated asks the court to compel Sievert to produce its supplemental production in a manner that identifies the documents responsive to each request as required under Rule 34(b)(2)(E)(i) and (ii)—the same relief Sievert seeks in its motion against Integrated—and reproduce unredacted copies of documents improperly withheld. (R. 104, MTC Sievert at 16.) In response, Sievert represents that the "relevancy reason" tags, which had been "inadvertently excluded," were included in each document and that "all redactions in question" were timely removed in a supplemental production sent after Integrated filed its motion. (R. 107, Sievert Opp. at 8.) Accordingly, these issues appear to be moot. To the extent Sievert's supplemental production does not correspond to each request, Sievert is ordered to cure this deficiency.

## Conclusion

For the foregoing reasons, the motions are granted in part and denied in part. Sievert's motion to compel Clutter, (R. 97, MTC Clutter), is granted in part as to RTP Nos. 2, 3, 5, 7, and 9, but denied as to RTP No. 1. Sievert's motion to compel Storako, (R. 101, MTC Storako), is granted in part as to RTP Nos. 2, 3, and 5-7 but denied as to RTP Nos. 1 and 9. Sievert's motion to compel Integrated, (R. 99, MTC Integrated), is granted in part, and Integrated is required to ensure its ESI production complies with Rule 34(b)(2)(E)(i) and (ii). The motion is denied in all other respects. Integrated's motion to compel Sievert, (R. 104, MTC Sievert), is

granted or granted in part as to INT Nos. 2B, 3, 4, 6, and 7 and RTP Nos. 17, 18, and 20, but denied as to INT Nos. 2A and 5. Integrated's motion is also granted as to its request for the Wochna's investigation documents (except to the extent they reflect attorney impressions or analysis) and a privilege log (as applicable) and to search again for responsive documents and supplement its production as needed.

ENTER:

Young B. Kim
United States Magistrate Judge